UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT GREENEVILLE

| UNITED STATES OF AMERICA, Plaintiff, | |
|---|---|
| v. | No. 2:07-cr-67 |
| HARLAN CULBERTSON, Defendant. | Judge Greer |

## RESPONSE IN OPPOSITION TO DEFENDANT'S MOTION FOR COMPASSIONATE RELEASE

Culbertson seeks immediate release from custody due to his asthma and concerns about COVID-19. (Doc. 66, Motion.) The United States responds, consistent with this Court's order (Doc. 67, Order), and opposes the request because Culbertson has not satisfied the requirements for relief under 18 U.S.C. § 3582(c)(1)(A). The Court lacks authority to grant relief because Culbertson has not exhausted his administrative rights. And even if the Court reached the merits, it should deny the motion because Culbertson has not shown that a reduction is warranted.

**Factual Background**

**I.     Facts regarding Culbertson's conviction and sentence**

In 2008, Culbertson was convicted by a jury of possessing a firearm as a convicted felon. (Doc. 24, Jury Verdict.) Based on his prior drug-trafficking convictions, he was classified as an armed career criminal and sentenced to 240 months' imprisonment. (Doc. 31, Judgment.) According to the Bureau of Prisons, he is scheduled for release in April 2026 and is currently housed at USP McCreary, where one staff member has tested positive for COVID-19 and one inmate who previously tested positive has already recovered. COVID-19 Cases, Federal Bureau of Prisons, *available at* https://www.bop.gov/coronavirus/ (accessed May 12, 2020).

**II.     Facts regarding the COVID-19 pandemic and the Bureau of Prisons response to it**

It is undisputed that COVID-19 has, in a short period of time, infected many people and caused many deaths.  According to the Centers for Disease Control and Prevention, the United States has over 1.3 million confirmed and presumed positive cases of COVID-19, and 79,756 people have already died as a result of the virus.  COVID-19: U.S. at a Glance, Centers for Disease Control and Prevention, *available at* https://www.cdc.gov/coronavirus/2019-ncov/cases-updates/cases-in-us.html (accessed May 12, 2020).

In response to that pandemic, the Bureau of Prisons (BOP) has taken significant measures to protect the health of the inmates in its charge, because "maintaining [the] safety and security of [its] institutions is [BOP's] highest priority."  Updates to BOP COVID-19 Action Plan (Mar. 19, 2020), Federal Bureau of Prisons, *available at* https://www.bop.gov/resources/news/ 20200319_covid19_update.jsp (accessed Apr. 21, 2020).  Indeed, BOP has had a pandemic influenza plan in place since 2012.  *See* Pandemic Influenza Plan-Module 1: Surveillance and Infection Control (Oct. 2012), BOP Health Services Division, *available at* https://www.bop.gov/ resources/pdfs/pan_flu_module_1.pdf (accessed Apr. 21, 2020).  That protocol is lengthy and detailed, establishing a six-phase framework requiring BOP facilities to begin preparations when there is first a "[s]uspected human outbreak overseas."  *Id*. at i.  The plan addresses social distancing, hygienic and cleaning protocols, and the quarantining and treatment of symptomatic inmates.  Consistent with that plan, BOP began planning for potential coronavirus transmissions in January 2020. At that time, the agency established a working group to develop policies in consultation with subject matter experts in the Centers for Disease Control, including by reviewing guidance from the World Health Organization.

On March 13, 2020, BOP began to modify its operations, in accordance with its Coronavirus (COVID-19) Action Plan, to minimize the risk of COVID-19 transmission into and within its facilities. Since that time, as events require and in response to expert guidance, BOP has repeatedly revised its Action Plan to address the ongoing public-health crisis.

Beginning on April 1, 2020, BOP implemented Phase Five of the Action Plan, which currently governs operations. COVID-19 Action Plan: Phase Five, Federal Bureau of Prisons, *available at* https://www.bop.gov/resources/news/20200331_covid19_action_plan_5.jsp (accessed Apr. 21, 2020); *see also* BOP Implementing Modified Operations, Federal Bureau of Prisons, *available at* https://www.bop.gov/coronavirus/covid19_status.jsp (accessed Apr. 21, 2020). That plan includes (1) securing all inmates in their assigned cells/quarters for at least 14 days to stop the spread of the virus; (2) modifying operations to limit group gatherings, with attention to social distancing to the extent possible, to facilitate commissary, laundry, showers, telephone, and computer access; (3) suspending all internal inmate movement, except for medical treatment or similar exigencies; (4) suspending social visits, while increasing the telephone allowance to 500 minutes per month; (5) suspending in-person legal visits; (6) screening all new arrivals, quarantining at-risk asymptomatic inmates, and isolating and testing symptomatic inmates; and (7) conducting enhanced health screening for staff in areas of sustained community transmission. Those measures help safeguard inmates against COVID-19 while providing them with any required medical care during this difficult time.

In addition, in an effort to relieve the strain on BOP facilities and assist inmates who are most vulnerable to the disease and pose the least threat to the community, BOP is exercising greater authority to designate inmates for home confinement. On March 26, 2020, the Attorney General directed the Director of the Bureau of Prisons, upon considering the totality of the

circumstances concerning each inmate, to prioritize the use of statutory authority to place prisoners in home confinement. That authority previously authorized placement in home confinement for the last six months or ten percent of a sentence, whichever is shorter, 18 U.S.C. § 3624(c)(2), and for those elderly and terminally ill inmates specified in 34 U.S.C. § 60541(g). But then Congress authorized BOP to "lengthen the maximum amount of time for which the Director is authorized to place a prisoner in home confinement" under § 3624(c)(2), so long as "the Attorney General finds that emergency conditions will materially affect the functioning of the Bureau [of Prisons]." Coronavirus Aid, Relief, and Economic Security (CARES) Act, Pub. L. No. 116-136, § 12003(b)(2), 134 Stat. 281, 516 (Mar. 27, 2020). The Attorney General made the requisite findings on April 3, 2020, and the Bureau of Prisons is now "urgently reviewing all inmates" to assess each inmate's vulnerability to COVID-19, whether home confinement would increase that inmate's risk of contracting COVID-19, and whether release to home confinement would risk public safety. Home Confinement, Federal Bureau of Prisons, *available at* https://www.bop.gov/resources/news/20200405_covid19_home_confinement.jsp (accessed Apr. 21, 2020). Since March 26, 2020, the Bureau of Prisons has placed 2,023 more inmates on home confinement. COVID-19 Home Confinement Releases, Federal Bureau of Prisons, *available at* https://www.bop.gov/coronavirus/ (accessed May 6, 2020).

Taken together, these measures are designed to mitigate sharply the risks of COVID-19 transmission in a BOP institution. BOP has pledged to continue monitoring the pandemic and to adjust its practices as necessary to maintain the safety of prison staff and inmates while also fulfilling its mandate of incarcerating all persons sentenced or detained based on judicial orders.

## Legal Framework

"[O]nce a court has imposed a sentence, it does not have the authority to change or modify that sentence unless such authority is expressly granted by statute." *United States v. Thompson*, 714 F.3d 946, 948 (6th Cir. 2013); *accord Dillon v. United States*, 560 U.S. 817, 825 (2010). One statute that authorizes sentence modifications is 18 U.S.C. § 3582(c)(1)(A), which allows this Court, in certain circumstances, to grant a defendant's motion to reduce his term of imprisonment. Before filing the motion, however, the defendant must first request that the Bureau of Prisons file such a motion on his behalf. 18 U.S.C. § 3582(c)(1)(A). A court may grant the defendant's own motion for a sentence reduction only if it was filed "after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf" or after 30 days have passed "from the receipt of such a request by the warden of the defendant's facility, whichever is earlier." *Id.*

If that exhaustion requirement is met, a court may reduce a term of imprisonment "after considering the factors set forth in [18 U.S.C. § 3553(a)]" if the Court finds, as relevant here, that (i) "extraordinary and compelling reasons warrant such a reduction" and (ii) "such a reduction is consistent with applicable policy statements issued by the Sentencing Commission." 18 U.S.C. § 3582(c)(1)(A)(i). As the movant, Culbertson bears the burden to establish that he is eligible for a sentence reduction. *E.g.*, *United States v. Jones*, 836 F.3d 896, 899 (8th Cir. 2016); *United States v. Green*, 764 F.3d 1352, 1356 (11th Cir. 2014).

The Sentencing Commission has issued a policy statement addressing reduction of sentences under § 3582(c)(1)(A). As relevant here, the policy statement provides that a court may reduce the term of imprisonment after considering the § 3553(a) factors if the Court finds that (i) "extraordinary and compelling reasons warrant the reduction;" (ii) "the defendant is not a

danger to the safety of any other person or to the community, as provided in 18 U.S.C. § 3142(g);" and (iii) "the reduction is consistent with this policy statement." U.S.S.G. § 1B1.13.[1]

The policy statement includes an application note that specifies the types of medical conditions that qualify as "extraordinary and compelling reasons." First, that standard is met if the defendant is "suffering from a terminal illness," such as "metastatic solid-tumor cancer, amyotrophic lateral sclerosis (ALS), end-stage organ disease, [or] advanced dementia." U.S.S.G. § 1B1.13, cmt. n.1(A)(i). Second, the standard is met if the defendant is:

> (I) suffering from a serious physical or medical condition,
>
> (II) suffering from a serious functional or cognitive impairment, or
>
> (III) experiencing deteriorating physical or mental health because of the aging process,
>
> that substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover.

U.S.S.G. § 1B1.13, cmt. n.1(A)(ii). The application note also sets out other conditions and characteristics that qualify as "extraordinary and compelling reasons" related to the defendant's age and family circumstances. U.S.S.G. § 1B1.13, cmt. n.1(B)-(C). Lastly, the note recognizes the possibility that the Bureau of Prisons could identify other grounds that amount to "extraordinary and compelling reasons." U.S.S.G. § 1B1.13, cmt. n.1(D).

---

[1] The policy statement refers only to motions filed by the BOP Director, because it was last amended on November 1, 2018, and defendants were not entitled to file motions under § 3582(c)(1)(A) until the enactment of the First Step Act in December 2018. *See* First Step Act of 2018, Pub. L. No. 115-391, § 603(b), 132 Stat. 5194, 5239; *cf.* 18 U.S.C. § 3582(c) (2012). In light of the statutory command that any sentence reduction be "consistent with applicable policy statements issued by the Sentencing Commission," 18 U.S.C. § 3582(c)(1)(A)(ii), and the lack of any plausible reason to treat motions filed by defendants differently from motions filed by BOP, the policy statement should apply equally to motions filed by defendants.

## Arguments

**I. The Court lacks authority to grant compassionate release because Culbertson has not exhausted his administrative remedies.**

This Court lacks authority to grant Culbertson's motion for a sentence reduction at this time. As explained above, § 3582(c) requires that a request for a sentence reduction be presented first to BOP for its consideration; only after 30 days have passed, or the defendant has exhausted all administrative rights to appeal the BOP's failure to move on the defendant's behalf, may a defendant move for a sentence reduction in court. That restriction is mandatory, and it continues to serve an important function during the present crisis. As the Third Circuit confirmed, if 30 days have not passed following presentation of a request to a warden, the statute "presents a glaring roadblock foreclosing compassionate release at this point." *United States v. Raia*, 2020 WL 1647922, at *2 (3d Cir. Apr. 2, 2020), *as revised* (Apr. 8, 2020). The vast majority of district courts to address this issue agree. *See*, *e.g.*, *United States v. Epstein*, 2020 WL 1808616, at *4 (D.N.J. Apr. 9, 2020) (collecting numerous cases); *United States v. McCann*, 2020 WL 1901089, at *2 (E.D. Ky. Apr. 17, 2020) ("these are unsettling times for everyone, including prisoners. But in such a context, the exhaustion requirement of the compassionate release statute is perhaps most important."); *United States v. Lugo*, 2020 WL 1821010, at *3 (D. Me. Apr. 10, 2020) ("The Court regards the language of section 3582(c) as both clear and mandatory."); *United States v. Alam*, 2020 WL 1703881 (E.D. Mich. Apr. 8, 2020) (collecting numerous cases holding that "the judiciary has no power to craft an exception to [exhaustion] requirements for defendants seeking release during the COVID-19 pandemic").

"'[A] judgment of conviction that includes [a sentence of imprisonment] constitutes a final judgment' and may not be modified by a district court except in limited circumstances." *Dillon*, 560 U.S. at 824. As the Supreme Court has recognized, finality is an important attribute

of criminal judgments, and one "essential to the operation of our criminal justice system." *Teague v. Lane*, 489 U.S. 288, 309 (1989) (plurality opinion). Accordingly, once a court has pronounced sentence and that sentence becomes final, the court has no inherent authority to reconsider or alter that sentence and may do so only if authorized by statute. *See, e.g.*, *United States v. Addonizio*, 442 U.S. 178, 189 & n.16 (1979). Consistent with that principle of finality, § 3582(c) provides that a court generally "may not modify a term of imprisonment once it has been imposed," except in three circumstances: (i) upon a motion for reduction in sentence under § 3582(c)(1)(A), such as that at issue here; (ii) "to the extent otherwise expressly permitted by statute or by Rule 35 of the Federal Rules of Criminal Procedure," § 3582(c)(1)(B); and (iii) if the defendant was sentenced "based on" a retroactively lowered sentencing range, § 3582(c)(2).

Given the plain language and purpose of the statute, the requirements for filing a sentence-reduction motion—including the requirement that a defendant exhaust administrative remedies or wait 30 days before filing a motion in court—are properly viewed as jurisdictional. Section 3582(c) says a "court may not modify" a term of imprisonment except in enumerated circumstances. 18 U.S.C. § 3582(c). It thus "speak[s] to the power of the court rather than to the rights or obligations of the parties," *Landgraf v. USI Film Prods.*, 511 U.S. 244, 274 (1994) (internal quotation marks omitted), delineating "when, and under what conditions," a court may exercise its "'adjudicatory authority,'" *Bowles v. Russell*, 551 U.S. 205, 212-13 (2007) (quoting *Eberhart v. United States*, 546 U.S. 12, 16 (2005) (per curiam)). That conclusion is reinforced by the historical powerlessness of the courts to modify a sentence after the expiration of the term at which it was entered. *See United States v. Mayer*, 235 U.S. 55, 67-69 (1914). Section 3582(c) is thus best understood as conferring the jurisdictional authority previously lacking—by providing express statutory authorization to modify otherwise final sentences in limited circumstances.

8

Whether a prescription is jurisdictional turns on Congress's intent, which is properly determined by the text, context, relevant historical treatment, and purpose of the provision. *Henderson v. Shinseki*, 562 U.S. 428, 436 (2011); *see also Fort Bend Co. v. Davis*, 139 S. Ct. 1843, 1848-50 (2019) (cautioning against imprecise use of the "jurisdictional" label, because even mandatory statutory claim-processing rules are presumed to be nonjurisdictional absent a clear statement to the contrary). Here, the relevant factors indicate that Section 3582(c) sets forth a jurisdictional limitation on a district court's authority to modify a sentence.[2] *E.g.*, *United States v. Hofmeister*, No. CV-5:16-cr-13, 2020 WL 1811365, at *1 (E.D. Ky. Apr. 9, 2020) (denying request to "waive these prerequisites given the dangers posed by COVID-19" and deeming the prerequisites "jurisdictional").

Even if this Court were to hold that the exhaustion requirement of Section 3582(c)(1)(A) is not jurisdictional, it is at least a mandatory claim-processing rule and thus must be enforced if a party "properly raise[s]" it. *Eberhart*, 546 U.S. at 19 (holding that Fed. R. Crim. P. 33, which permits a defendant to move for a new trial within 14 days of the verdict, is a nonjurisdictional but mandatory claim-processing rule); *United States v. Gaytan-Garza*, 652 F.3d 680, 681 (6th Cir. 2011) (per curiam) (holding that Fed. R. App. P. 4(b), which establishes the time period for a criminal defendant to file a notice of appeal, is a nonjurisdictional rule that must be enforced where the government raises it). The United States raises the rule here, and it must be enforced.

Although judicially-created exhaustion requirements may sometimes be excused, courts cannot ignore statutory commands such as that presented in Section 3582(c)(1)(A). *McCarthy v. Madigan*, 503 U.S. 140, 144 (1992) ("[w]here Congress specifically mandates, exhaustion is

---

[2] Similarly, the prerequisites for relief under Section 3582(c)(2), which allows a sentence reduction based on a retroactive guideline amendment, have been deemed jurisdictional. *E.g.*, *United States v. Williams*, 607 F.3d 1123, 1125-26 (6th Cir. 2010).

required"). The Supreme Court reaffirmed that principle in *Ross v. Blake*, 136 S. Ct. 1850 (2016), when rejecting a judicially-created "special circumstances" exception to the exhaustion requirement in the Prison Litigation Reform Act of 1995. Rejecting the "freewheeling approach" adopted by some courts of appeals, under which some prisoners were allowed to pursue litigation even where they had failed to exhaust available administrative remedies, *Ross*, 136 S. Ct. at 1855, the Supreme Court demanded fidelity to the statutory text, explaining that the "mandatory language" of the exhaustion requirement "means a court may not excuse a failure to exhaust" even to accommodate exceptional circumstances, *id*. at 1856.

No "futility" exception exists for statutory exhaustion requirements. *See*, *e.g.*, *United States v. Holden*, 2020 WL 1673440, at *5 (D. Or. Apr. 6, 2020); *United States v. Eberhart*, 2020 WL 1450745, at *1 (N.D. Cal. Mar. 25, 2020). A few courts have incorrectly excused the § 3582 exhaustion requirement as futile in light of the present pandemic, but several of those decisions have rested on the fact that the defendant only had a few days left on the sentence, a consideration not present here. *See Colvin*, 2020 WL 1613943, at *1 (finding exhaustion futile because inmate had 11 days left on her sentence); *United States v. Perez*, 2020 WL 1546422, at *1 (S.D.N.Y. Apr. 1, 2020) (finding exhaustion futile because inmate had less than 21 days left on his sentence and was recovering from two vicious beatings while in prison); *but see United States v. Zukerman*, 2020 WL 1659880, at *1 (S.D.N.Y. Apr. 3, 2020) (finding exhaustion futile where obese, 75-year old inmate suffered from diabetes and hypertension). And at least one of those decisions incorrectly relied on precedent addressing a judicially created—as opposed to statutorily created—exhaustion requirement. *See Perez*, 2020 WL 1546422 at *2 (relying only

on *Washington v. Barr*, 925 F.3d 109, 118 (2d Cir. 2019)). The requirement of a 30-day period to allow BOP the initial review of the defendant's request therefore cannot be excused.[3]

Culbertson emailed the warden of his facility on May 8, 2020, saying only, "this my notice for compassionate release." (Exhibit 1, Request & Denial.) Culbertson did not articulate the basis upon which he was seeking release, nor provide any information about his release plans, both of which are required. *See* 28 C.F.R. § 571.62(a); BOP Program Statement 5050.50, Compassionate Release/Reduction in Sentence: Procedures for Implementation, *available*

---

[3] A handful of district courts, mostly in the Second Circuit, have disregarded the exhaustion requirement. But nearly every other district court to have considered the issue in a reported decision agrees with *Raia*—and the position of the United States—that the 30-day requirement is mandatory and must be enforced. *See, e.g.*, *United States v. Ogarro*, 2020 WL 1876300, at *3 (S.D.N.Y. Apr. 14, 2020) ("In fact, section 3582(c)'s exhaustion proscription is clear as day."); *United States v. Alam*, 2020 WL 1703881 (E.D. Mich. Apr. 8, 2020) (collecting cases from "many other courts" concluding that "the judiciary has no power to craft an exception to [exhaustion] requirements for defendants seeking release during the COVID-19 pandemic"); *United States v. Fevold*, 2020 WL 1703846, at *1 (E.D. Wis. Apr. 8, 2020) ("Not only is exhaustion of administrative remedies required as a matter of law, but it also makes good policy sense. The warden and those in charge of inmate health and safety are in a far better position than the sentencing court to know the risks inmates in their custody are facing and the facility's ability to mitigate those risks and provide for the care and safety of the inmates."); *accord United States v. Smith*, 2020 WL 1903160 (D. Conn. Apr. 17, 2020); *United States v. Allen*, 2020 WL 1878774 (N.D. Ohio Apr. 15, 2020); *United States v. Meron,* 2020 WL 1873900 (E.D. Cal. Apr. 15, 2020); *United States v. Schultz*, 2020 WL 1872352 (W.D.N.Y. Apr. 15, 2020); *United States v. Petrossi*, 2020 WL 1865758 (M.D. Pa. Apr. 14, 2020); *United States v. Rabadi*, 2020 WL 1862640, at *3 (S.D.N.Y. Apr. 14, 2020); *United States v. Fuller*, 2020 WL 1847751 (W.D. Wash. Apr. 13, 2020); *United States v. Hembry*, 2020 WL 1821930 (N.D. Cal. Apr. 10, 2020); *United States v. Feiling*, 2020 WL 1821457 (E.D. Va. Apr. 10, 2020); *United States v. Lugo*, 2020 WL 1821010, at *3 (D. Me. Apr. 10, 2020); *United States v. Boyles*, 2020 WL 1819887 (D. Kan. Apr. 10, 2020); *United States v. Gillis*, 2020 WL 1846792 (C.D. Cal. Apr. 9, 2020); *United States v. Reeves*, 2020 WL 1816496 (W.D. La. Apr. 9, 2020); *United States v. Annis*, 2020 WL 1812421, at *2 (D. Minn. Apr. 9, 2020); *United States v. Hofmeister*, 2020 WL 1811365, at *3 (E.D. Ky. Apr. 9, 2020); *United States v. Epstein*, 2020 WL 1808616 (D.N.J. Apr. 9, 2020); *United States v. Carter*, 2020 WL 1808288 (S.D. Ind. Apr. 9, 2020); *United States v. Eisenberg*, 2020 WL 1808844 (D.N.H. Apr. 9, 2020); *United States v. Holden*, 2020 WL 1673440 (D. Or. Apr. 6, 2020); *United States v. Perry*, 2020 WL 1676773 (D. Colo. Apr. 3, 2020); *United States v. Johnson*, 2020 WL 1663360, at *3-*6 (D. Md. Apr. 3, 2020); *United States v. Carver*, 2020 WL 1604968 (E.D. Wash. Apr., 1, 2020); *United States v. Zywotko*, 2020 WL 1492900 (M.D. Fla. Mar. 27, 2020).

*at* https://www.bop.gov/policy/progstat/5050_050_EN.pdf (accessed May 12, 2020). The warden nonetheless considered his request and, seeing no obvious basis upon which Culbertson would qualify for compassionate release, denied the request. (Exhibit 1, Request & Denial.) The warden noted that Culbertson could appeal through the administrative remedy process. (*Id*.) That is because only a denial at the level of BOP's director or general counsel constitutes a "final administrative decision" that cannot be further appealed. *See generally* 28 C.F.R. § 571.63. As a result, Culbertson has not yet exhausted his administrative rights and must therefore wait for the expiration of the 30-day period provided by statute—*i.e.*, June 7, 2020—before he can petition this Court for relief. The Court should deny the motion without prejudice to Culbertson's ability to refile once he has exhausted his administrative rights or 30 days have passed after his request to the warden.

II.   **Culbertson has not established "extraordinary and compelling reasons" warranting his immediate release, much less that the § 3553(a) factors justify his release.**

As explained above, the relevant provision of § 3582(c) allows a sentence reduction only if this Court determines that "extraordinary and compelling reasons" justify the reduction and that "such a reduction is consistent with applicable policy statements issued by the Sentencing Commission." 18 U.S.C. § 3582(c)(1)(A)(i). The Sentencing Commission's policy statement defines "extraordinary and compelling reasons" to include, as relevant here, certain specified categories of medical conditions. U.S.S.G. § 1B1.13, cmt. n.1(A).

For that reason, to state a cognizable basis for a sentence reduction based on a medical condition, a defendant first must establish that his condition falls within one of the categories listed in the policy statement. Those categories include (i) any terminal illness, and (ii) any "serious physical or medical condition . . . that substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which

12

he or she is not expected to recover." U.S.S.G. 1B1.13, cmt. n.1(A). If a defendant's medical condition does not fall within one of the categories specified in the application note (and no other part of the application note applies), his motion must be denied.

The COVID-19 pandemic, which poses a threat to every person worldwide, does not fall into either of those categories and therefore could not alone provide a basis for a sentence reduction. *E.g.*, *United States v. Korn*, 2020 WL 1808213, at *6 (W.D. N.Y. Apr. 9, 2020) ("the mere *possibility* of contracting a communicable disease such as COVID-19, without any showing that the Bureau of Prisons will not or cannot guard against or treat such a disease, does not constitute an extraordinary or compelling reason for a sentence reduction under the statutory scheme."). The categories encompass specific serious medical conditions afflicting an individual inmate, not generalized threats to the entire population. As the Third Circuit has held, "the mere existence of COVID-19 in society and the possibility that it may spread to a particular prison alone cannot independently justify compassionate release." *Raia*, 2020 WL 1647922 at *2; *see also Eberhart*, 2020 WL 1450745 at *2 ("a reduction of sentence due solely to concerns about the spread of COVID-19 is not consistent with the applicable policy statement of the Sentencing Commission as required by § 3582(c)(1)(A)."). To classify COVID-19 as an extraordinary and compelling reason would be inconsistent with the text of the statute and the policy statement, would be detrimental to BOP's organized and comprehensive anti-COVID-19 regimens, could result in the scattershot treatment of inmates, and would undercut the strict criteria BOP employs to determine individual inmates' eligibility for sentence reductions and home confinement. Section 3582(c)(1)(A) contemplates sentence reductions for specific individuals, not the widespread prophylactic release of inmates and the modification of lawfully imposed sentences to deal with a global viral pandemic.

That does not mean, however, that COVID-19 is irrelevant to a court's analysis of a motion under § 3582(c)(1)(A). If, for example, an inmate has a chronic medical condition that has been recognized by the Centers for Disease Control as elevating the inmate's risk of becoming seriously ill from COVID-19, that condition may possibly satisfy the standard of "extraordinary and compelling reasons." The chronic condition (*i.e.*, one "from which [the defendant] is not expected to recover") could possibly be deemed sufficiently "serious" as to "substantially diminish[] the ability of the defendant to provide self-care within the environment of a correctional facility," even if that condition would not have been an "extraordinary and compelling reason" absent the risk of COVID-19. U.S.S.G. § 1B1.13, cmt. n.1(A)(ii)(I). As part of its analysis, a court should consider whether an inmate is more likely to contract COVID-19 if he is released than if he remains incarcerated. In most cases, that will depend in part on the inmate's proposed release plan and whether a known outbreak has occurred at his institution.

Culbertson asserts that he has asthma. (Doc. 66, Motion at 2-3.) The United States acknowledges that the CDC has recognized moderate-to-severe asthma as a condition creating a higher risk of complications from COVID-19. *See* Groups at Risk for Severe Illness, Centers for Disease Control, *available at* https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/groups-at-higher-risk.html (accessed May 12, 2020). And the presentence report confirms that Culbertson has asthma. (Sealed Presentence Report at ¶ 53.) But that is not the end of the inquiry. Even if this Court were to find that the combination of Culbertson's medical conditions and his risk of contracting COVID-19 fit within one of the categories listed in U.S.S.G. § 1B1.13, it must still find that Culbertson's medical condition rises to the level of severity required by that policy statement, *e.g.*, that it is not well-controlled by medication. *See*, *e.g.*, *United States v. Peaks*, No. 16-20460, 2020 WL 2214231, at *2 (E.D. Mich. May 7, 2020)

(denying motion for compassionate release from obese 31-year-old with high blood pressure at a facility with numerous positive COVID-19 cases because, despite his "elevated risk of developing the more severe symptoms of COVID-19, . . . that generalized risk . . . is not akin to the type of 'extraordinary and compelling reasons' justifying compassionate release"); *United States v. Gamble*, No. 3:18-cr-22-4, 2020 WL 1955338, at *4 (D. Conn. Apr. 23, 2020) (denying motion from diabetic defendant because his condition was well-controlled by medication, BOP had implemented appropriate measures to protect him against COVID-19, and defendant had "not persuaded the Court that he is any worse off than the public at large" with respect to COVID-19); *United States v. Shah*, No. 16-20457, 2020 WL 1934930, at *2 (E.D. Mich. Apr. 22, 2020) (denying motion from defendant with diabetes and hypertension because, in part, those "medical conditions are not out of the ordinary, nor . . . fatal or untreatable"). Culbertson has not "shown that the plan proposed by the Bureau of Prisons is inadequate to manage the pandemic within [his] correctional facility, or that the facility is specifically unable to adequately treat" him. *United States v. Gileno*, No. 3:19-cr-161, 2020 WL 1307108, at *2-4 (D. Conn. Mar. 19, 2020) (denying motion for release due to failure to satisfy exhaustion requirement and because defendant's medical conditions were "largely the same as when he was sentenced"). If the Court were to even consider the substance of the motion, it should find that Culbertson has not established an "extraordinary and compelling reason" for a sentence reduction within the meaning of § 1B1.13.

Even if Culbertson had established an extraordinary and compelling reason for release, this Court would then need to consider the 18 U.S.C. § 3553(a) factors, to the extent applicable, to determine whether release is warranted. Compassionate release 'due to medical conditions' is generally treated as 'a rare event[,]'" and "typically [granted] only . . . after . . . a significant term

of incarceration." *United States v. Johns*, No. CR 91-392-TUC-CKJ, 2019 WL 2646663, at *2 (D. Ariz. June 27, 2019) (collecting cases); *see also id*. at *3 (granting compassionate release to 81-year-old "model inmate" who had served nearly 23 years in custody and was "experiencing deteriorating . . . health because of the aging process that substantially diminishe[d] his ability to provide self-care" within prison). And the Sixth Circuit has confirmed that a court may properly consider "the amount of time served in determining whether a sentence modification is appropriate." *United States v. Kincaid*, No. 19-6271, 2020 WL 1951899, at *1 (6th Cir. Apr. 23, 2020) (order). To date, Culbertson has served 145 months—approximately 60 percent—of his 240-month sentence.

When initially sentenced at age 25, Culbertson already had 14 criminal history points, placing him in the highest possible criminal history category. (Sealed Presentence Report at ¶ 46.) He was convicted of possessing a firearm as a felon, and he was sentenced as an armed career criminal, based on his multiple prior convictions for drug-trafficking. (*Id*. at ¶¶ 25, 35, 36.) While in custody, Culbertson has incurred numerous disciplinary sanctions, including six instances in the past two years for possessing or using drugs, alcohol, or a dangerous weapon. (Exhibit 2, Disciplinary Record.)

Granting Culbertson immediate release would be inconsistent with the totality of the § 3553(a) factors, which require a court to consider not only a defendant's characteristics, including his medical condition, but also "the nature and circumstances of the offense," § 3553(a)(1); "the need for the sentence imposed to reflect the seriousness of the offense . . . and to provide just punishment," § 3553(a)(2)(A); "the sentencing range established" by the Guidelines, § 3553(a)(4); and "the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct," § 3553(a)(6).

**Conclusion**

For the foregoing reasons, the Court should deny Culbertson's motion because Culbertson has failed to exhaust his administrative remedies and has failed to establish any entitlement to relief.

Respectfully submitted,

J. Douglas Overbey
United States Attorney

By:   *s/ Donald Wayne Taylor*
      DONALD WAYNE TAYLOR
      Assistant U.S. Attorney
      KY Bar No. 86663
      220 West Depot Street, Ste. 423
      Greeneville, TN  37743
      (423) 639-6759
      Wayne.Taylor2@usdoj.gov

**CERTIFICATE OF SERVICE**

I certify that on May 12, 2020, this response was filed electronically and a true copy will be sent to defendant by regular United States mail, postage prepaid, addressed as follows:

Harlan Culbertson
No. 20944-074
U.S.P. McCreary
P.O. Box 3000
Pine Knot, KY  42635

      *s/ Donald Wayne Taylor*
      Donald Wayne Taylor
      Assistant United States Attorney